**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CHAPTER 11** |
| | ) | |
| **BILLY E. BELCHER, JR.** | ) | **CASE NO.  06-71448** |
| **JANE I. BELCHER** | ) | |
| | ) | |
| **Debtors.** | ) | |

_____

## REVISED MEMORANDUM DECISION

The matters before the Court are the Debtors' Motion for Entry of an Order

Granting the Debtors a Discharge or, in the Alternative, Waiving the Quarterly Fee ("Motion for

Discharge"), the objection thereto filed by the office of the United States Trustee, and the

Debtors' Final Report and Application for Final Decree ("Motion for Final Decree").  A hearing

on said matters was held on April 27, 2009.  The primary issue raised by these motions is

whether, in light of the changes to the Bankruptcy Code through the Bankruptcy Abuse

Prevention and Consumer Protection Act ("BAPCPA") of 2005, an individual chapter 11 debtor

may obtain a discharge after a Chapter 11 Plan of Reorganization has been confirmed, but prior

to completion of such debtor's obligations under such Plan, in short, an "early" discharge.  This

issue is a matter of first impression before this Court, and, given the novelty of the issue and

apparent scarcity of authority directly addressing the questions presented, the Court took the

matter under advisement.  Based on the following analysis, the Court concludes that

Congressional intent is best served by denying both of the Debtors' motions.

FINDINGS OF FACT

The facts of the case presently before the Court are not in dispute.  The Debtors

filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code along with their

supporting schedules on November 30, 2006.  Based on the supporting schedules filed, the chapter 7 trustee filed a No Asset Report on February 8, 2007, signaling that under a chapter 7 liquidation, no funds would have been available for distribution to the unsecured creditors.[1]  On August 31, 2007 the Debtors filed a Motion to Convert Case, seeking to convert their case from one under chapter 7 to one under chapter 11.[2]  The Court granted this Motion to Convert by Order entered September 25, 2007.  After conversion, the Debtors managed their properties as debtors-in-possession under 11 U.S.C. §§ 1007 and 1108.  The Debtors filed a Disclosure Statement and Chapter 11 Plan of Reorganization on January 31, 2008.  The Disclosure Statement was conditionally approved by Order entered February 1, 2008.  Per the provisions of that Order, such approval become final on February 29, 2008, the deadline for filing any objections thereto.  An Amended Plan, containing only non-material modifications, was subsequently filed on March 5, 2008.  The Debtors' Plan was then confirmed by Order entered March 11, 2008.

The confirmed Plan requires the Debtors to pay their disposable income of $2,003.60 per month into a Distribution Fund created by the Plan for a period of sixty months after the effective date, which was March 22, 2008.  The Debtors are to pay their administrative claims and priority claims, including the statutory quarterly fees to the United States Trustee

---

[1] According to the accompanying schedules filed, the Debtors exempted all equity in their real and personal property, and no objections to such exemptions were filed.  The Debtors claimed exempt a total of $23,634.99 in real and personal property.

[2] In the interim, the United States Trustee had filed a Motion to Dismiss the Debtors' case under chapter 7 on February 9, 2007.  A final pre-trial conference regarding the Motion to Dismiss had been set for September 10, 2007, and trial on said Motion had been set for September 25, 2007.  Upon the conversion of the Debtors' case to one under Chapter 11, said Motion was withdrawn by Order entered October 10, 2007.

pursuant to 28 U.S.C. § 1930(a)(6), either directly with cash or through funds available from the

Distribution Fund.  The Plan also requires the Debtors to pay the two secured claims of

Wachovia Bank and the one secured claim of First National Bank directly.[3]  The Plan requires

that payments to be applied to the arrearage claim of First National Bank be made through the

Distribution Fund.  Finally, the Plan requires that payments be made *pro rata* through the

Distribution Fund to the unsecured creditors, whose claims in the aggregate total $501,548.17.

The Debtors' student loan creditors will also share in this *pro rata* distribution over the life of

the plan.  However, once all distributions have been made from the Distribution Fund, the

Debtors will then assume regular contractual payments to their student loan creditors.[4]

Additionally, the Debtors did not seek an early discharge through the terms of their confirmed

Plan.  In fact, the only discussion of a discharge in the Plan itself is found in Section 8.1.1 of the

Plan, which states that "The terms of the Plan shall be binding upon the Debtors . . . , and the

Debtors will be eligible for a discharge of dischargeable debts in accordance with 11 U.S.C. §

1141(d)."  No indication was made regarding the timing of the discharge.  However, the Plan

does include, in Section 8.1.4, language noting the following:

> On the date the Reorganized Debtors make the 60th and final

---

[3] According to the information provided with Wachovia's proofs of claim, the Debtors have 295 payments of $641.28 per month remaining under their mortgage.  Wachovia, however, does not provide sufficient information from which this Court can determine the number of monthly payments remaining or the specific amount of such payments under Wachovia's second claim which is based upon a credit line deed of trust secured by the Debtors' home.  The claim of First National Bank is being restructured by the Plan and obligates the Debtors to make payments of $42.70 per month directly to the bank.

[4] According to the Debtors' Schedule J, the total monthly payments made to their student loan creditors is $2,551.26 per month.  No information has been provided as to the number of monthly payments remaining to satisfy these obligations.

3

payment due to the Distribution Fund, and except as otherwise
expressly provided in the Discharge Order issued by the Court, all
persons who have held, hold, or may hold dischargeable Claims
against the Debtors are, with respect to any such dischargeable
Claim, permanently enjoined from taking [any actions related to the
enforcement or collection of such claims].

Accordingly, the terms of the confirmed Plan, while never expressly discussing the timing of

discharge, seem to imply that such discharge would not be requested until after completion of

any payments under the Plan required to be made from the Distribution Fund. Additionally,

Section 1.4.2 of the Debtors' Disclosure Statement states: "Unless a discharge is sooner granted,

upon completion of the 60th monthly payment required by the Plan, the Debtors will be granted

a discharge." Thus, this Court finds that the Disclosure Statement and Plan, read together,

contemplate that discharge would not occur until completion of all payments to and distributions

from the Distribution Fund have been made.

On December 4, 2008, approximately nine months after confirmation of this Plan,

the Debtors filed their Motion for Final Decree in which the Debtors aver that the Plan of

Reorganization has been substantially consummated within the meaning of 11 U.S.C. § 1101(2)

and request that the Court issue a Final Decree closing the case pursuant to 11 U.S.C. §

1106(a)(7). In the Final Report accompanying the Motion, the Debtors note that, as of the date

of its filing, they had paid $9,491.93 to counsel for the Debtors and $650 to the United States

Trustee to satisfy their quarterly fees. The Final Report also notes that the Debtors had paid

$7,701.84 and $3,469.79 upon the Wachovia claims and $675.84 upon the claim of First

National Bank. Finally, the Report notes that the Debtors had paid $2,003.60 to the unsecured

creditors. According to the Final Report, as of the date of the filing of the Motion for Final

Decree, all creditors had been paid what had been required to that date under the terms of the

confirmed Chapter 11 Plan or more.  According to the terms of the Plan, however, as of the date

the Motion for Final Decree was filed, the Debtors remained obliged to make fifty-one more

monthly payments into the Distribution Fund.

The initial hearing on the Motion for Final Decree was held February 23, 2009,

but was continued at the request of the Debtors for the purpose of filing a motion seeking early

discharge.  On April 13, 2009, the hearing on the Motion for Final Decree was continued again

to give the United States Trustee adequate time to determine whether the granting of an early

discharge was supported by law.  The Debtors filed their Motion for Discharge on March 20,

2009, and the United States Trustee filed an Objection thereto on April 22, 2009.  At the

conclusion of the hearing held on the Motion for Final Decree, the Motion for Discharge, and the

United States Trustee's Objection, the Court, upon the request of the United States Trustee,

allowed the parties the discretion to file briefs in support of their respective positions.  The

United States Trustee on May 4, 2009 filed a post-hearing memorandum opposing the Debtors'

Motion for Discharge, to which the Debtors filed a brief in response on May 12, 2009.

During the hearing, counsel for the Debtors, upon questioning by the Court,

represented that the quarterly fees paid to the United States Trustee were estimated to amount to

$650 per quarter for the remainder of the plan.  According to the Motion for Final Decree and

Final Report, only $650 of quarterly fees had been paid as of the date of its filing on December

4, 2008.  Such amount would have satisfied the first quarter, ending June 30, 2008, after the

Plan's effective date of March 22, 2008.  This amount is in accord with the provisions of 28

U.S.C. § 1930(a)(6) which sets the quarterly fees paid at $650 per quarter so long as the

aggregate disbursements in such quarter total more than $15,000 but less than $75,000.[5]  Based

upon the information provided in the Debtor's Post-Confirmation quarterly reports, this Court

finds that the quarterly fee paid to the United States Trustee in this case under the currently

applicable rate is $650 per quarter for a total of $13,000 during the five-year period in which

disbursements are to be made through the Distribution Fund.

CONTENTS OF THE PARTIES

In their Motion for Final Decree, the Debtors aver that they had commenced

making distributions as required under the confirmed Plan of Reorganization.  Therefore, the

Debtors concluded that the Plan had been substantially consummated within the meaning of 11

U.S.C. § 1101(2).  The Debtors subsequently filed a Motion for Discharge, in which they assert

that prior to BAPCPA a chapter 11 debtor received a discharge upon confirmation of the

debtor's plan, thereby allowing the debtor to move for the entry of a final decree closing the

case.  The Debtors observed that the entry of a final decree would end their obligation to pay

quarterly fees to the United States Trustee.  The Debtors, noting that all administrative claims as

well as the claim of First National Bank had been paid in full, argue that they have substantially

consummated the Plan, and they seek the entry of a discharge order so that they can move

forward with their Motion for Final Decree.  The Debtors also note that, as of the date of

---

[5]   While "disbursements" is not defined in § 1930(a)(6), this Court will follow the ruling of Chief Judge Krumm in *In re Huff*, 270 B.R. 649 (W.D. Va. 2001), that Congress intended to include in the calculation of United States Trustee fees "all payments made by a Chapter 11 debtor, from whatever source and to whomever paid." *Id.* at 650.  It appears that the total disbursements made by the Debtors in this case total more than $15,000 per quarter.  For the quarter ending June 30, 2008, the Debtors listed total expenses of $28,279.11 in their Post-Confirmation quarterly report.  The Debtors listed a total $34,153.42 in expenses for the quarter ending December 30, 2008 and $26,514.59 in expenses for the quarter ending March 30, 2009.

confirmation of their Chapter 11 Plan, the total amount of funds that would have been available for distribution under a chapter 7 liquidation would have been $10,184.91, only $692.98 of which would have been available for distribution to the unsecured creditors.

The Debtors then argue that this Court has the authority under 11 U.S.C. § 1141(d)(5)(B) to grant them a discharge, even though they have not completed payments under the plan, because the value already distributed to their creditors under the plan is at least what creditors would have received through a Chapter 7 liquidation. The Debtors also argue that, should a discharge be entered and the case be closed, they will no longer be required to devote funds which they can scarcely afford to the payment of the quarterly fees to the Office of the United States Trustee. Finally, the Debtors argue that, should the case be closed, the Debtors and other parties in interest will continue to be bound by the Plan and the Debtors would also be protected by the discharge injunction. In the alternative, however, the Debtors seek the entry of an order pursuant to 28 U.S.C. § 1930(f)(3) waiving the quarterly fees. However, other than the assertion that this Court may waive the quarterly fees in accordance with the Judicial Conference policy, the Debtors provide no arguments supporting this alternative relief.

In his objection to the Motion for Discharge, the United States Trustee argues that under BAPCPA, Congress has specifically changed the manner in which individual chapter 11 cases are to be administered, which changes preclude the pre-BAPCPA practice of case closure at a point shortly after confirmation. Specifically, the United States Trustee argues that, under BAPCPA, 11 U.S.C. § 1141(d)(5) provides that an individual chapter 11 debtor may only receive a discharge upon completion of plan payments or for cause. Citing *Matter of OORC*, 359 B.R. 227, 232-33 (Bankr. N.D. Ind. 2007), the United States Trustee argues that prior to

BAPCPA courts often considered cases fully administered at or shortly after substantial

consummation under 11 U.S.C. §§ 350, 541, 1127, and 1141, and Bankruptcy Rule 3022.  The

United States Trustee cites changes under BAPCPA to 11 U.S.C. §§ 541, 1123(a)(8), 1127(e),

1129(a)(15), and 1141(d)(5) for the proposition that the addition of post-confirmation

participation, oversight, and the opportunity for plan modification have been added to the

chapter 11 process, causing chapter 11 cases to parallel cases under chapter 13, which remain

open until all plan payments have been made and a debtor's discharge is entered.  The United

States Trustee then argues that, contrary to the Debtors' assertion that creditors will be protected

once a discharge order is entered, creditors will instead be left without recourse in the event the

Debtors cease making their payments.

Additionally, the United States Trustee argues that the avoidance of quarterly fees

is an improper consideration for closing a case under 11 U.S.C. § 350.  The United States

Trustee argues that the impact of case closure on the collection of quarterly fees is a consequence

of the legal analysis under § 350 and the BAPCPA provisions which, when read together, require

that a chapter 11 case be fully administered before it can be closed, and, thus, the quarterly fees

required as a result of that analysis should not be used as a factor in determining whether a case

should be closed before it is fully administered.  The United States Trustee cites *In re Ball*, 2008

WL 2223865 (Bankr. N.D. W. Va., May 23, 2008) for the proposition that, even where an

argument could be made that the payment of quarterly fees to the United States Trustee would

impact the feasibility of a plan, the proper time to address that issue is at the time of the

formulation of the disclosure statement and plan.  As a result, because the Debtors chose to

convert their case to one under chapter 11, they cannot claim ignorance of those fees and cannot

now seek relief from the requirement of the fees simply because they have to wait for a

discharge.

During the hearing on the Motion for Discharge, the Debtors argued that, instead

of analyzing the case under 11 U.S.C. § 1141(d)(5)(A), which requires that a debtor show cause

to support the grant of a discharge prior to completion of payments required by the terms of the

Plan, the case should be analyzed under 11 U.S.C. § 1141(d)(5)(B), which does not require

cause.  The Debtors argue that the elements for granting an early discharge, which they observe

is discretionary with the Court under this subsection, are met.  The Debtors further argue that the

entry of a discharge order will make it easier for the creditors to understand what actions they

can and cannot take with respect to collection of their claims against the Debtors.  Counsel for

the Debtors, upon questioning by the Court, acknowledged the similarities between cases under

chapter 11 and those under chapter 13, but ultimately observed that Congress in crafting the

language of 11 U.S.C. § 1141(d) did not simply import the existing language of 11 U.S.C. §

1328(b) governing when the court may grant a discharge even though all plan payments have not

been made.[6]  To be more precise, § 1328(b)(1) requires a determination by the court that "the

_____

[6] On this point, *Collier on Bankruptcy* states as follows:

> As with the discharge after completion of payments, this discharge
> differs from the chapter 13 model, in that it does not require as a
> condition to the discharge that "the debtor's failure to complete
> [payments under the plan] is due to circumstances for which the
> debtor should not justly be held accountable."  As such, there is no
> express statutory standard for the noncompletion discharge other than
> the court's discretion.  It appears, however, that the omission of
> chapter 13's accountability requirements from the chapter 11
> provision should be interpreted to mean that accountability should
> not enter into the court's determination of whether to grant the
> noncompletion discharge; the only consideration other than payments

[chapter 13] debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable." Conversely, § 1141(d)(5)(B) contains no comparable language with regard to individual chapter 11 debtors.

The United States Trustee responded by noting that, although the Court may have discretion to grant a discharge to an individual chapter 11 debtor, there must still be some basis for granting the same. The United States Trustee also noted concerns with the ability of an individual chapter 11 debtor to modify his or her plan post-confirmation and that issues could arise should a debtor under chapter 11 be required to modify his or her plan after closure of the case. The United States Trustee, while acknowledging the possibility that the Court could condition discharge in such a way to preserve creditors' rights under the Plan, still expressed concern over the changes in the balance between the relative positions of the Debtors and their creditors should an early discharge be granted.

At the conclusion of the hearing, the Court extended both parties the opportunity to supply additional briefing on the issue, and both parties accordingly filed briefs on this matter. The United States Trustee, in his brief, did not make any additional arguments in support of his position. Instead, he cited for the Court's review three cases, *In re Johnson*, 402 B.R. 851 (Bankr. N.D. Ind., 2009); *In re Sheridan*, 391 B.R. 287 (Bankr. E.D.N.C. 2008); and *In re Ball*, 2008 WL 2223865 (Bankr. N.D. W. Va., May 23, 2008), in which the respective courts have taken varying positions as to whether an early discharge could be granted and whether a case

---

of at least liquidation value is whether plan modification is practicable.

8 *Collier on Bankruptcy* ¶ 1141.05[b] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.) (quoting 11 U.S.C. § 1328(b)(1)).

could be closed prior to completion of all payments required under a confirmed chapter 11 plan.

On the other hand, in their post-hearing brief, the Debtors reassert their position that this Court

should exercise its discretion and enter an order discharging the Debtors because they have

satisfied the factors set forth in 11 U.S.C. § 1141(d)(5)(B).  The Debtors argue further that, by

comparing subsections (A) and (B), it becomes clear that, to obtain a discharge under the latter

subsection of § 1141(d)(5), the Debtors need not make a special showing of cause.  The Debtors

also note that, contrary to the assertions of the United States Trustee, no case has directly

addressed the application of § 1141(d)(5)(B) to a debtor's request for a discharge in the

circumstances presented in this case.  The Debtors look to *In re Johnson* for that court's view on

the imprudence of a bright-line rule requiring that a chapter 11 case be kept open until all

payments under the terms of a confirmed plan are satisfied.  *In re Johnson*, 402 B.R. at 855.

Specifically, the court in *Johnson* observed that such a rule could well require that a chapter 11

case remain open for decades should an individual debtor be required to make regular payments

under the terms of a twenty to thirty year home mortgage through a chapter 11 plan.  *Id.*  The

Debtors note that this precise problem, foreseen by the court in *Johnson*, is present in the case at

hand, as the Debtors are making such long-term payments not only under the terms of their

mortgage but also under the terms of their non-dischargeable student loan debts.  As a result of

the possibility that the case would have to remain open for as long as twenty years under the

United States Trustee's proposed rule, the Debtors argue that the Court should exercise its

discretion and grant the Debtors a discharge.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this proceeding by virtue of the provisions of 28

U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984.  A determination regarding the entry of a Discharge Order and the issuance of a Final Decree is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

Section 1141(d)(5) of the Bankruptcy Code sets forth the circumstances under which an individual chapter 11 debtor may receive a discharge.  This Section provides:

> In a case in which the debtor is an individual–
>
> (A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
>
> (B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed plan payments under the plan if–
>
>> (i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date; and
>>
>> (ii) modification of the plan under section 1127 is not practicable; and
>
> (C) unless after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that–
>
>> (i) section 522(q)(1) may be applicable to the debtor; and
>>
>> (ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

11 U.S.C. § 1141(d)(5).[7]  As noted above, there have been very few decisions in which courts

have considered the effect of these provisions.

By virtue of the Debtors' Motion for Final Decree, this Court is also faced with

the question of whether it may close the Debtors' case prior to the completion of payments under

the confirmed Plan of Reorganization.  Closure of a case is governed by 11 U.S.C. § 350(a),

which provides: "After an estate is fully administered and the court has discharged the trustee,

the court shall close the case."  Bankruptcy Rule 3022 helps courts implement § 350(a) in the

chapter 11 context.  Rule 3022 provides: "After an estate is fully administered in a chapter 11

reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a

final decree closing the case."  Fed. R. Bankr. P. 3022.  Commentary associated with this Rule

provides useful guidance in its application.  A 1991 Advisory Committee Note provides:

> Entry of a final decree closing a chapter 11 case should not be
> delayed solely because the payments required by the plan have not
> been completed.    Factors that the court should consider in
> determining whether the estate has been fully administered include
> (1) whether the order confirming the plan has become final, (2)
> whether deposits required by the plan have been distributed, (3)
> whether the property proposed by the plan to be transferred has been
> transferred, (4) whether the debtor or the successor of the debtor
> under the plan has assumed the business or the management of the
> property dealt with by the plan, (5) whether payments under the plan
> have commenced, and (6) whether all motions, contested matters, and
> adversary proceedings have been finally resolved.

Fed. R. Bankr. P. 3022, Advisory Committee Note (1991).  The question still remains, however,

whether this analysis has been altered by the amendments to the Code implemented through

BAPCPA.  As is the case regarding the grant of an early discharge, very few courts have

---

[7] Section 1141(d)(5) was added to the provisions of Chapter 11 of the Bankruptcy Code
through the enactment of BAPCPA in 2005.

13

considered in reported post-BAPCPA individual debtor chapter 11 cases the entry of a final

decree prior to debtor's completion of payments provided for in the plan.  Often, however, in the

decisions which have considered this general subject, the questions regarding early discharge

and closure of the case prior to completion of plan payments are both discussed.

In *In re Sheridan*, 391 B.R. 287, the chapter 11 debtors as an express part of their

disclosure statement requested discharge upon confirmation and prior to completion of plan

payments.  *Id*. at 288.  The debtors filed a joint petition under chapter 11, and only one class of

creditors, Class IX for general unsecured claims, was impaired by their plan.  *Id*. at 288-89.

Under the plan, Class IX creditors were to receive *pro rata* distribution of a total of $20,000 with

interest at the rate of 6% per annum over a period of five years.  *Id*. at 289.  To guarantee

payment, the plan granted Class IX creditors a second deed of trust upon the debtors' primary

residence.  *Id*.  In their disclosure statement and notice of confirmation hearing, the debtors also

sought the court's approval for entry of an early discharge.  *Id*. at 290-91.[8]  Though the debtors'

disclosure statement and plan drew no objections, the Court issued a decision regarding the

timing of the discharge.  *Id*. at 289-90.  The decision was issued contemporaneously with the

order finally approving the debtors' disclosure statement and confirming the debtors' plan.  *Id.* at

291.  In determining whether a discharge could be granted upon confirmation of the plan, the

court observed that the general rule under § 1141(d)(5)(A) was that an order of discharge would

---

[8] Specifically, the court found that the "first page of the disclosure statement in bold and capital letters alerted creditors that the debtors were requesting that discharge be effective upon confirmation as follows: '**THE DEBTORS HEREBY GIVE NOTICE THAT THEY INTEND TO SEEK THE ABOVE-REFERENCED RELIEF** [discharge upon confirmation of the plan on its effective date] . . . **AT THE HEARING ON CONFIRMATION OF THIS PLAN.**'" *Id*. at 291.

14

not be entered until the debtor has made all plan payments. *Id*. at 290. However, the court noted that a discharge could still be entered under § 1141(d)(5)(A) after notice and a hearing provided that the court finds sufficient cause.[9] *Id*. The court concluded that the inclusion of conspicuous language in the disclosure statement and notice of confirmation hearing of the debtors' intent to seek early discharge upon confirmation of the plan satisfied the notice requirement of § 1141(d)(5)(A). *Id*. at 290-91. The court noted that this section of the Bankruptcy Code provides no guidance as to what might constitute cause and that there had been only limited discussion in the form of case law on the subject. *Id*. at 291. However, the court allowed the discharge to take effect upon confirmation based on the fact the debtors had provided significant assurance of payments to the unsecured creditors by granting them an interest in collateral securing payments due under the plan. *Id*.

The court in *In re Ball*, 2008 WL 2223865, considered a motion filed by the debtor seeking an order granting a discharge, closing the case, and entering an injunction. *Id*. at *1. The debtor sought such an order after confirmation of his individual chapter 11 plan, in which he proposed to pay his creditors through liquidation of non-estate assets and a pool of several items of estate property. *Id*. Such plan was anticipated to have only a short duration of a few months. *Id*. at *1, *4. At the time the debtor's motion had been filed, the debtor's class 4 creditors, who objected to the motion, were still due over $725,000 under the plan. *Id*. at *1. The debtor, however, had executed a promissory note granting a security interest in a

---

[9] The court also observed that § 1141(d)(5)(B) provides for early discharge in a manner similar to the "hardship discharge" in chapter 13 cases under § 1328(b). However, the court had no occasion to consider § 1141(d)(5)(B) directly as subsection (B) requires a motion to be filed by or on behalf of the debtor. *Id*. at 290 n. 3.

15

condominium guaranteeing payment to his class 4 creditors. *Id.* The court considered the issue under § 1141(d)(5)(A), observing that this section provides that a discharge may be entered before all payments are completed under the plan only when sufficient cause is shown. *Id.* at *4. The court, however, was not persuaded that avoidance of quarterly fee obligations to the United States Trustee was sufficient cause and denied the debtor's motion for discharge. *Id.* Moreover, because all payments had not been completed and because the debtor was not yet entitled to a discharge, the court concluded that the case had not been fully administered and, therefore, held that the case could not yet be closed under 11 U.S.C. § 350(a). *Id.* at *2-*3.

         In *In re Johnson*, 402 B.R. 851, an individual chapter 11 debtor moved the court to close his case under 11 U.S.C. § 350(b), even though a discharge had not yet been entered. *Id.* at 853. Under the confirmed plan, the unsecured creditors were to be paid over a period of five years and were to receive a fixed portion of the debtor's post-confirmation income less various expenses and payments to secured and priority creditors. *Id.* The court found that the plan had been substantially consummated pursuant to 11 U.S.C. § 1101(2). *Id.* at 854. The court weighed the arguments by the debtor that the pre-BAPCPA policy of closing individual chapter 11 cases soon after confirmation had been unaltered against the arguments by the United States Trustee that, through BAPCPA, Congress amended the Code in such a way that an individual chapter 11 case tracks closely with chapter 13 cases in which the case remains open until a debtor completes payments under the plan and receives a discharge. *Id.* Observing that the fact that an individual chapter 11 could have potentially unlimited duration in circumstances where the debtors were paying long-term debts such as twenty to thirty year mortgages, the court found that the United States Trustee's position was untenable. *Id.* at 855. Instead, the court held that consideration of

16

whether to enter a final decree closing a chapter 11 case should involve analysis of the factors

laid out in the Advisory Committee Note regarding Bankruptcy Rule 3022.[10]  *Id*. at 856.

Because the order confirming the debtor's plan had become final, there was no deposit to

distribute, all property the plan contemplated to be distributed had been transferred or otherwise

disposed of, the debtor had begun to manage his affairs, payments to creditors had been

commenced, the plan had been substantially consummated, and all outstanding motions,

adversary proceedings and contested matters had been resolved, the court found that granting the

motion to close the case was appropriate given the circumstances before it, even though no

discharge had yet been entered.  *Id*. at 856, 858.

   The Court concludes that § 1141(d)(5)(B), upon which the Debtors principally

rely in support of their request for an "early" discharge, is inapplicable because this is not a case

which can satisfy one of the conditions of such section, namely, the provision contained in

subsection (ii) of such section that "modification of the plan under section 1127 is not

practicable."  Under § 1127(b) the "proponent of a plan or the reorganized debtor" may modify a

confirmed plan prior to "substantial consummation" of such plan only if "circumstances warrant

such modification and the court, after notice and a hearing, confirms such plan as modified . . .."

That section is not applicable here because the Debtors contend and it is undisputed that their

plan has been substantially consummated.  However, § 1127(e) is applicable.  That section,

added by BAPCPA and which applies only to individual chapter 11 debtors, provides that a

"plan may be modified at any time after confirmation . . . but before completion of payments

under the plan, whether or not the plan has been substantially consummated, upon request of the

---

[10] This Note is quoted verbatim at page 13 of this decision.

17

debtor, the trustee, the United States trustee, or the holder of an allowed unsecured claim" to

effect any of three possible changes:

> (1) increase or reduce the amount of payments on claims of a
> particular class provided for by the plan;
> (2) extend or reduce the time period for such payments; or
> (3) alter the amount of the distribution to a creditor whose claim is
> provided for by the plan to the extent necessary to take account of
> any payment of such claim made other than under the plan.

11 U.S.C. § 1127(e)(1), (2) and (3).  It is significant and helpful to achieving a full understanding

of this provision that subsection (e) of § 1127 was added to chapter 11 of the Bankruptcy Code at

the same time that § 1115(a)(2) was added which made "earnings from services performed by

the debtor after the commencement of the case but before the case is closed, dismissed, or

converted to a case under chapter 7, 12, or 13, whichever occurs first" property of the

bankruptcy estate.  The Debtors' confirmed Plan in this case, pursuant to this latter amendment

to chapter 11, relies upon income to be earned by them to make the payments provided for their

general unsecured creditors. The Court believes that § 1141(d)(5)(B) contemplates a situation

where an individual debtor seeks entry of an order of discharge even though, due to some

particular cause or set of circumstances brought before the court, the debtor is unable to fulfill all

of the payment obligations under a confirmed plan or demonstrates some other cause why he or

she should be excused from doing so and modification of such payment obligations is "not

practicable."  Furthermore, the Court does not believe that Congress intended simply to provide

additional discretion to bankruptcy courts to grant an early discharge once the creditors had

received at least as much as they would have received in a chapter 7 liquidation case. While

under the current circumstances no modification of the Belchers' Plan appears warranted, a

material change in those circumstances might well make a modification of Plan provisions not

18

merely justifiable, but completely necessary.  For example, if one of the Debtors were to suffer

some disabling injury or illness, or, on a more optimistic note, were to benefit from some great

unexpected good turn of fortune prior to completion of Plan payments, some modification of the

Plan, either adverse or favorable to the interests of the unsecured creditors, would appear to be

not just possible, but quite likely.  Accordingly, the Court concludes that in an individual chapter

11 case plan under which payments from future income are to be made to creditors whose debts

will be partially paid, but otherwise will be discharged upon completion of payments under the

plan, it is not possible in the absence of some particular factual situation being presented to

determine that modification of such a plan pursuant to § 1127(e) could not be "practicable"

within the meaning of § 1141(d)(5)(B)(ii).

   If the foregoing analysis of § 1141(d)(5)(B) is correct, the Debtors are left to rely

upon § 1141(d)(5)(A) for statutory authority authorizing a discharge before their Plan

obligations have been met.  It is apparent from a reading of this latter section that Congress

intended the applicable general rule to be that no discharge would be granted until "completion

of all payments under the plan."  If, however, "cause" for the court to order "otherwise" would

simply be to permit the debtor to avoid the regular fees which accrue to the United States Trustee

until the chapter 11 case is closed or dismissed, the exception would swallow the general rule

because such fees are of general application to individual chapter 11 debtors and any debtor

presumably would prefer to avoid such fees rather than pay them.  Such a result certainly cannot

be what Congress intended.  More in keeping with the intent of this section would be a

determination of "cause" for granting a discharge after payment of the sixty payments to the

Distribution Fund to satisfy the obligation of the Plan to general unsecured creditors with

19

dischargeable claims against the debtor, *see, e.g., In re Brown*, 2008 WL 4817505, *1 (Bankr. D.D.C. October 29, 2008) ("[T]he plan provides for monthly mortgage payments to continue on the debtor's various mortgage debts.  Those payments might last for many years, and . . . I do not believe that [§1141(d)(5)(A)] was written with those types of payments to mortgagees in mind."), but prior to completion of payments due on the educational loans or the Debtors' long term mortgage obligations.  Such a conclusion avoids the patently unreasonable result noted in *Johnson*, 402 B.R. at 855, that individual chapter 11 debtors could not obtain a discharge until all such long term obligations had been satisfied, a result which would not conform with chapter 13 practice concerning the timing of the issuance of an order of discharge, but fly directly in its face.  Such a determination also protects those creditors whose interests are impaired by the confirmed plan without endangering the interests of those creditors not needing such protection.

Alternatively, the Debtors ask the Court to excuse them from paying the fees which accrue to the United States Trustee under the authority of 28 U.S.C. § 1930(f)(3), which provides that Congressional authorization in § 1930(f)(1) to waive chapter 7 filing fees for debtors unable to pay them "does not restrict the . . . court from waiving, in accordance with Judicial Conference policy, fees prescribed under this section for other debtors or creditors." They have not offered any specific argument in support of this request, however, nor directed the Court's attention to any Judicial Conference policy which would authorize such relief.  For its part the Court is not aware of any such Judicial Conference policy.  Therefore, the Court concludes that it does not have the authority under § 1930(f)(3) to waive such fees.

The final question is whether an appropriate basis exists for closing[11] the case without the entry of an order of discharge on the assumption that the Debtors would request, upon completion of their sixtieth payment to, and disbursement from, the Distribution Fund, that the case be reopened so that a discharge could be granted.  Under the currently applicable provisions of the Appendix to 28 U.S.C. § 1930, which sets forth miscellaneous bankruptcy fees prescribed by the Judicial Conference pursuant to the authority of § 1930(b), the fee to reopen a chapter 11 case is $1,000 and such fee "must be charged when a case has been closed without a discharge being entered."  While payment of such a fee on initial consideration might be perceived as somewhat burdensome to the Debtors, when compared to the United States Trustee fees they would avoid were the case to be closed at this time, it would be a net benefit rather than an actual economic cost to them.  On the other hand, it would likely represent a significant burden upon any creditor who might wish to file a motion seeking some modification of the confirmed plan pursuant to 11 U.S.C. § 1127(e).  While the Court acknowledges that, under the language of the 1991 Advisory Committee Note to Bankruptcy Rule 3022 authorizing the closing of a chapter 11 case even though all plan payments have not been made, there is certainly an arguable basis for granting the relief sought by the Debtors in their motion, it concludes that such authority and prior practice are not appropriate to the new post-BAPCPA world of chapter 11 plans funded by post-filing and post-confirmation earnings by individual debtors.  Under the provisions of chapter 11 in effect when that Note was written, there was no provision for

---

[11] Closing the case prior to entry of an order of discharge would have the effect of terminating the automatic stay pursuant to 11 U.S.C. § 362(c)(2)(A), but the practical consequences of this to the Debtors are uncertain because the provisions of a confirmed plan bind not only them but every creditor as well. 11 U.S.C. § 1141(a).

modification of a chapter 11 plan after substantial consummation had occurred.  Now, however,

a chapter 11 confirmed plan of an individual debtor can be modified after such consummation

has occurred so long as the debtor has not completed payments under the plan. 11 U.S.C. §

1127(e).  Such a modification can be sought not just by the debtor, but by any creditor or the

United States Trustee.  Plan obligations are to be satisfied from property of the estate not yet in

existence, meaning future earnings.  Under these circumstances the Court is not persuaded that at

this time this case has been "fully administered" within the meaning of 11 U.S.C. § 350(a).  The

Court has determined that under the quarterly disbursements previously reported to the Court the

Debtors have incurred post-confirmation a statutorily imposed fee to the United States Trustee of

$650 per quarter, equivalent to $2,600 annually.  Based on the filings made with the Court it

appears extremely likely that they will continue to incur that same quarterly fee until the sixtieth

payment to the Distribution Fund has been made.  The Court's original decision in this matter

was based on a belief that the Debtors would incur a quarterly fee of only $325, which struck me

as relatively modest when compared with the benefit the Debtors stood to obtain in this case.

Admittedly, a quarterly obligation of twice that amount presents a more difficult case because a

total cost of $13,000 over the life of the Plan is significantly more burdensome to the Debtors

than is $6,500.  It is not unreasonable, however, for the Debtors to bear their proportionate share

of the cost of the United States Trustee system imposed upon chapter 11 debtors.  It does strike

me that the amount of this fee is somewhat excessive for the Debtors to pay, especially when one

considers that a non-individual chapter 11 debtor could qualify to have its case being closed after

substantial consummation rather than having to wait until the completion of all plan payments.

Even if such amount is indeed somewhat burdensome to debtors in the Belchers' general

22

situation, it can hardly be said to present a serious constitutional issue, and if that assertion is accurate, the amount of the fee is set by Congress, not by this Court.  If it proves more than the Belchers can reasonably pay, they may feel compelled to seek a modification of the terms of the confirmed plan.  Furthermore, the timing of payment of any fee so incurred is a different question than the period in which it may be incurred.  In any event, the Court is satisfied that requiring the case to remain open until the Distribution Fund has been fully funded and disbursed is the result best adhering to Congressional intent with regard to chapter 11 individual debtors funding their plan obligations with income to be earned during the applicable term of the confirmed plan.  It further is satisfied that such result is also the one most closely fulfilling the reasonable expectations of the creditors who accepted the Debtors' chapter 11 plan.  An order to such effect denying the Debtors' motions will be entered contemporaneously with the docketing of this decision.

This 2nd day of June, 2009.

_William F. Stone, Jr._
UNITED STATES BANKRUPTCY JUDGE